COTTON STATES MUTUAL
INSURANCE COMPANY,
Plaintiff–Appellant,

v.

AUTO–OWNERS INSURANCE COMPA-
NY, Defendant–Appellee.

No. 87–8493.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1988.

John B. McPhail, McKenzie & McPhail, Atlanta, Ga., Margaret M. Witten, Teresa Harris Atkins, Atlanta, Ga., for plaintiff-appellant.

William E. Cannon, Jr., Cannon & Meyer Von Bremen, Albany, Ga., for defendant-appellee.

Before HILL and KRAVITCH, Circuit Judges and TUTTLE, Senior Circuit Judge.

HILL, Circuit Judge:

The sole issue in this appeal is whether the appellant, Cotton States Mutual Insurance Company, is entitled to contribution from the appellee, Auto–Owners Insurance Company, under Georgia law. We conclude that Cotton States is not entitled to contribution.

## I. FACTS

The parties stipulated to the facts in this case. On December 8, 1984, Ralph Benton entered into a contract to purchase property located in Coolidge, Georgia from Mary Stanfield, the executrix for the estate of Verbon Stanfield. In the event that the property was destroyed or substantially damaged prior to the closing, the contract provided Benton with an option: "(a) the contract may be cancelled, or (b) Purchaser may consummate the contract and receive such insurance as is paid on the claim of loss." (R1–11–11). The contract also stated the following: "[i]nsurance policy to be furnished to seller by purchaser with seller being loss-payee." (R1–11–12).

Benton obtained an insurance policy on the property from Cotton States. The policy listed Benton as the insured, and Farmers & Merchants Bank of Thomas County and the Farmers Home Administration were named as mortgagees. Subsequently, Stanfield was added as a mortgagee. The Cotton States policy contained the following pro rata or "other insurance" provision:

This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.

(R1–10–13) In addition to this coverage, Auto–Owners had a policy covering the

property with Verbon Stanfield which was effective through August 23, 1985.

In March of 1985, between the time of the execution of the contract for sale and the closing date, the property was destroyed by fire. Cotton States made payment under its policy to Benton and Stanfield jointly in the amount of $38,000. Benton ultimately used these funds to consummate the sale. Stanfield did not file a claim against Auto–Owners and Auto–Owners made no payment under its policy. Cotton States requested that Auto–Owners pay contribution based upon its pro rata share of coverage on the property, but Auto–Owners refused. Cotton States then filed the present suit against Auto–Owners in the district court. Finding that Cotton States was not entitled to contribution under Georgia law, the district court entered summary judgment in favor of Auto–Owners, *see Cotton States Mutual Ins. Co. v. Auto–Owners Ins. Co.,* 659 F.Supp. 256 (M.D.Ga.1987), and Cotton States appeals. We affirm.

## II. DISCUSSION

The contract for sale that Benton and Stanfield entered into allowed Benton to cancel the contract if the property was destroyed or substantially damaged before the closing. Because Benton was free to walk away from the deal if the property was destroyed, the risk of such destruction or damage rested entirely with Stanfield, the seller. Prudence thus required that Stanfield insure herself against that risk, and to that end the contract required Benton to furnish her with an insurance policy naming her as loss-payee. It is clear from the contract that the parties contemplated that Benton would furnish insurance to protect Stanfield's interest as the owner of the property because she bore the risk in the event of destruction prior to closing.[1]

Rather than obtaining an insurance policy naming Stanfield as the insured or as the loss-payee, however, Benton obtained the policy with Cotton States naming himself as insured and listing three lenders, including Stanfield, as mortgagees. This policy was clearly intended to protect Benton and the lenders after the closing, when each had obtained an interest in the property, while the insurance contemplated by the parties in the contract for sale was to protect Stanfield prior to the closing. In this case, of course, we are required to evaluate the insurers' rights and obligations in light of the coverage actually acquired rather than the coverage which Stanfield hoped Benton would acquire.

The Cotton States policy named Stanfield as a mortgagee and stated that the interest of the mortgagee "shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property." This language indicates a New York Standard or union mortgage clause. *See Pacific Ins. Co. of New York v. R.L. Kimsey Cotton Co.,* 114 Ga.App. 411, 151 S.E.2d 541, 543 (1966). The coverage of the mortgagee under this clause is limited to the amount of the mortgage debt, and the mortgagee's recovery will not exceed that amount. *See* 5A J. Appleman & J. Appleman, Insurance Law and Practice § 3401, at 295 (Rev. ed. 1970). In this case, at the time of the fire there was no mortgage and no mortgage debt. Thus, Stanfield was not entitled to recover any amount as mortgagee under the policy with Cotton States. While the policy was in effect at the time of the fire, it would only provide Stanfield with protection after the loan was made, presumably at the closing, and only up to the amount of the debt.

It is also clear from the contract for sale and the Cotton States policy that Benton did not have an insurable interest in the property itself at the time of the loss. The parties suggest that he had an insurable interest in the opportunity to buy the house or in the benefit of his bargain. It is not at all clear from the Cotton States policy that

---

1. Given that Stanfield was fully protected up to and beyond the anticipated closing date by the policy with Auto–Owners, she did not need the coverage which the contract required Benton to provide. However, she may have intended to cancel the policy with Auto–Owners when Benton provided her with a policy at his expense, or her failure to cancel the Auto–Owners policy may simply have been an oversight or the result of an over-abundance of caution.

1529

it protected this interest. However, if the policy did protect Benton's opportunity to purchase the property, that was a separate and distinct insurable interest from any interest in the property itself, *see Allstate Ins. Co. v. Thompson,* 164 Ga.App. 508, 297 S.E.2d 520, 522 (1982), which was the object of protection under Auto–Owners' policy. As the district court found, in this respect "there were two insurers, two insurable interests, and two policies." *Cotton States,* 659 F.Supp. at 258.

Cotton States now seeks contribution from Auto–Owners, relying primarily on *Continental Ins. Co. v. Federal Ins. Co.,* 266 S.E.2d 351 (Ga.App.1980). In that case, fire destroyed the property after the sale and the seller's insurer paid the claim and was allowed to obtain contribution from the insurer who covered the buyer with the seller as mortgagee. *Id.* at 351–52. The critical distinction between *Continental* and this case, as recognized by the district court, is that there were two insurance companies in *Continental* that were obligated to pay for the loss of the property while here only Auto–Owners was required to pay. *Continental* holds that an insurer who pays on an obligation is not a mere volunteer and may seek contribution from another insurer who is obligated on the same loss. It does not hold that an insurer who pays where it is not obligated to pay at all may recover contribution. Were it otherwise, given that the right to contribution must be reciprocal, an insurer who is not obligated to pay under its policy could be required to pay contribution to an insurer who was obligated to pay.

In this case, Auto–Owners was obligated to pay its insured, Stanfield, for the destruction of the property. Cotton States was not obligated to pay Stanfield under its policy because she was protected only up to the amount of the mortgage debt and there was no debt at the time of the fire. If Cotton States was obligated to pay Benton, which is far from certain, the payment would not have been for the loss of the property, which Auto–Owners protected against, but for the loss of his opportunity to buy the property. Given that Cotton States was not obligated to pay any portion

of the loss covered by Auto–Owners, it may not seek contribution from Auto–Owners. *Continental* and the pro rata clause in Cotton States' policy protected Cotton States in the event that it paid more than its share on a particular loss, but they did not protect Cotton States in the event that it paid on a loss on which it had no obligation to pay.

### III. CONCLUSION

For the reasons discussed above, the judgment of the district court is

AFFIRMED.